## Case No. 5,119.

### FRIEDMAN v. GOODWIN et al.

[1 McAll. 142.] 1

Circuit Court, D. California. July Term, 1856.

1 [Reported by Cutler McAllister, Esq.]

Crittenden & Inge, for plaintiff.
Lockwood & Wallace and C. H. S. Williams, for defendants.

McALLISTER, Circuit Judge. The plaintiff sues in ejectment for certain premises described in his complaint, and rests his title upon the rights acquired under a sale made of the premises sued for, under and by virtue of an act of the legislature of the state of California, passed on the 18th day of May, 1853, entitled "An act to provide for the sale of the interest of the state of California in the property within the water-line front of the city of San Francisco, as defined in and by the act entitled 'An act to provide for the disposition of certain property of the state of California,' passed March 26, 1851" (Comp. Laws Cal. 767). The defendants rely for the defense of their title, on an act of the same legislature, passed previously, on the 26th March 1851 (Comp. Laws Cal. 764). The superiority of title depends upon the solution of two questions: 1. In whom was the title to the disputed premises on the 26th day of March, 1851, at which time the elder title of the defendants accrued? 2. What was the legal effect of that upon their title?

On the ratification of the treaty of Guadalupe Hidalgo, the title to the premises passed from Mexico to the government of the United States. In the latter it remained during the territorial existence of California. The lease executed by Captain Keyes during that existence, approved by General Riley, and subsequently ratified by A. H. H. Stuart, secretary of the interior, could divest no title from the United States, and consequently could transfer none to Theodore Shillaber, under whom defendants claim. The lease, for all purposes of conveying any title, was still-born at its birth. The title remained in the United States; and on the admission of California into the confederacy on an equal footing with the original states, the title passed, under the operation of that admission and of the constitution of the United States, to the state of California, where it remained until the 26th day of March, 1851, at which date the act under which the defendants claim was passed.

What is the legal effect of that act? It is well to remark, in limine, that all objections urged against the title of defendants on account of non-payment of rent, or by reason of the failure of the lessees to comply with any other condition of the lease from Captain Keyes, are disposed of by the fact that they are not claiming title under it. They claim title from the state under the legislative grant of March 26, 1851. To that, then, we are to look for the source of it. If the state of California, as the court believes, had the title to the premises in dispute vested in her, and if she transferred it to the defendants, or to those under whom defendants claim, then the purchase under the sale by virtue of the subsequent act of the legislature of this state on the 18th day of May, 1853, by the plaintiffs, gives their title no standing against that of the defendants. The act of the legislature to be considered, is entitled "An act to provide for the disposition of certain property of the state of California," passed March 26, 1851 (Comp. Laws Cal. 764). The first section describes the boundaries of the lots in relation to which it is intended to legislate. The second section grants the use and occupancy of all the land described in the first section, to the city of San Francisco for the term of ninety-nine years; save as therein afterwards excepted, being those lands which have been sold by the authority of the ayuntamiento, or town or city council, or by any alcalde of the said town or city, at public auction, in accordance with the terms of the grant known as Kearney's grant to the city of San Francisco; or which have been sold or granted by any alcalde of the said city of San Francisco, and confirmed by the ayuntamiento, or town

or city council, thereof, &c. There are certain terms annexed to the grant, to which it is unnecessary to refer. This second section closes with the following words: "The property known as the 'Government Reserve' is exempt from the operation of this act; except that any estate held by virtue of any lease or leases, executed or confirmed by any officer of the United States on behalf of the same, shall be and the same are hereby granted and confirmed to the lessees thereof; and the written instrument whereby such lease or leases was made shall, in all actions brought by the lessees for the recovery of the lands so demised, be sufficient evidence of title and possession to enable the plaintiff to recover." It is upon this last clause that defendants rely. The construction contended for by plaintiff is, that the confirmation by the act is limited to "any estate held;" and that no estate was held under the lease, it being void; that nothing in fact was confirmed, and therefore the lessee took nothing by the legislative grant. It is true, that an estate in land means, in strict legal parlance, such interest as the tenant hath therein; but the word "estate," when used in a statute, or instrument other than a deed, and calling for such meaning, is to be deemed as passing the land itself. The statute, speaking of the estate (referring to the lands described), declared that they are hereby granted; evidently referring to those lands. But, turning from this logomachy, or war of words, there are other and less verbal arguments which suggest the unsoundness of the construction urged by the plaintiff's counsel. It would impute gross ignorance to the legislature, not to award to them the knowledge of the utter impotency of any attempt by an officer of the government to alien any portion of the land the property of the United States, without the authority of an act of congress. That the president with the heads of departments combined could not so have done, must have been known to them; and it is reasonable to consider that the legislature had a full knowledge that no interest by any unauthorized act of the officer could have been conveyed, and that large and extensive improvements had been made in good faith by individuals, and therefore they determined, in the distribution of the property, to save the rights of the occupants by a confirmation without which they would have had no legal existence. It is to be observed that the act does not stop at the point where the estate is confirmed, but proceeds to declare that the "written instrument" by which such "lease or leases were made shall, in all actions brought by the lessees for the recovery of the lands so demised, be sufficient evidence of title and possession to enable the plaintiff to recover." Now, although a private individual may not, the sovereign may confirm that which was originally void; and in this case the legislature has given vitality to the written instrument, so far as

to constitute it, by their creative faculty, sufficient evidence of both title and possession, with the avowed purpose that he may recover the lands. This would seem to show clearly their intention to do what was attempted to be done, and to grant the lands at least for the terms mentioned in the leases. If this written instrument is made by the legislature a muniment of title sufficient to enable the party to recover the land, such legislative action is equivalent to a grant. The grantees who were to take, were those who held by virtue of any lease or leases executed or confirmed by any officer of the United States on behalf of the same. The defendants bring themselves strictly within this class, and answer to the descriptio personarum. They hold by virtue of a lease executed in behalf of the United States, executed by one of the officers thereof, ratified by another, and confirmed by a third.

It is true that no grantee is named in this law; and it is equally true that a grant is void for uncertainty, where the grantee is not sufficiently designated to distinguish him from all others; and when such designation cannot be gathered from the grant, it cannot be supplied by parol testimony. Thus a grant to the heirs of A., in being, is void; for non-constat who are the heirs of a living person. If the word "heirs" is to be construed "children," then, what children? Are those in esse at the time of the grant only to take; or were after-born to be included? Was the grant to take effect immediately, or after the death of grantor? If no children survived A., would his brothers and sisters take? There are no means of ascertaining from the face of the grant the intention of the grantor. In such case, therefore, the grant is void for uncertainty in the designation of the grantee.

Admitting this rule in its fullest extent, it by no means results that a grantee must be named. "The names of persons at this day are only sounds for distinction's sake, though it is probable they originally imported something more; as some natural qualities, features, or relations; but now there is no other use of them but to mark out the individuals we speak of, and to distinguish them from all others; and therefore in grants, which are to receive the most benign interpretation, and most against the grantor, if there be sufficient shown to ascertain the grantor and grantee, and to distinguish them from all others, the grant will be good." Bac. Abr. tit. "Grant C." If they (the grantees) are so designated as to distinguish them from all others, the grant would be good without a name at all; and the mistake of a name in such a case would not vitiate. Hall v. Leonard, 1 Pick. 27. Again, parol evidence, though inadmissible to vary or contradict the terms of a deed, is competent to show the situation of a party in relation to things and parties around him; thus, if the language

of a written instrument is applicable to several persons, parol evidence is admissible of any intrinsic circumstance to show what person or persons were intended. 1 Greenl. Ev. § 288. In the interpretation of a grant, another rule prevails. Where a grant made by government in general terms refers to a certainty, it is the same as if such certainty had been expressed in the grant, though it be not matter of record, but lie in averment, by matter in pais or in fact.

There is no doubt that the grant in this case comes within the principles of the foregoing authorities. In the grant there is a descriptio personarum who are to take. The defendants have brought themselves within that description, and are entitled to a verdict. Upon consideration whereof, after hearing counsel for the respective parties, we adjudge that defendants are not guilty.